# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

PAMELA VAN DEN ENG,

               Plaintiff,

      v.                                    Case No. 03-C-504

THE COLEMAN COMPANY,

               Defendant.

---

KAREN DROSSART,

               Plaintiff,

      v.                                    Case No. 03-C-1392

THE COLEMAN COMPANY,

               Defendant

---

## MEMORANDUM AND ORDER

---

These consolidated cases, which are before this court on diversity jurisdiction, *see* 28 U.S.C. § 1332, arise out of the deaths of Patrick Van Den Eng and Dean Drossart. On October 21, 2000, Drossart and Van Den Eng were asphyxiated by carbon monoxide in their hunting cabin. Prior to their deaths, Drossart and Van Den Eng were using a Powermate 5012 heater manufactured by defendant. Presently before the court is Plaintiff Pamela Van Den Eng's motion to compel certain discovery responses by Defendant The Coleman Company. For the following reasons, plaintiff's motion will be granted in part and denied in part.

## 1. Deposition Exhibits

Plaintiff asserts that defendant failed to produce exhibits from depositions given by various of its employees in other cases. The court compelled production of the depositions in its Order of August 25, 2004. In response to this motion, defendant tendered to plaintiff a "key" to identifying the documents that make up the exhibits by Bates number among the documents defendant has produced. (Ex. AA.) Plaintiff contends in her reply that she has thus far been unable to assemble the exhibits, even with guidance from the key. Even if plaintiff could assemble the deposition exhibits from documents already produced, defendant must produce them as exhibits if it has maintained them as such. The key identifies each exhibit by a Bates range "previously identified as privileged." (Ex. AA.) The documents should be produced so numbered and so arranged. Plaintiff's motion will be granted with respect to the deposition exhibits.

## 2. Daniel Deposition

Plaintiff complains that defendant failed to produce a knowledgeable 30(b)(6) witness to testify about why it discontinued marketing its Focus line of heaters for camping and hunting use. On October 29, 2004, plaintiff noticed a 30(b)(6) deposition of:

> an individual of Coleman's designation authorized and most capable to testify on its behalf as to Coleman's alleged change in marketing strategy to market propane radiant heaters as construction or industrial use [sic] as opposed to camping, hunting, etc., and should also be [sic] authorized and most capable to discuss the subjects concerning the mattes contained in Exhibit A attached hereto.

(Ex. 18 at 1.) "Exhibit A" listed various documents that were to be produced prior to the deposition. In a letter accompanying the notice, plaintiff's counsel described it as "a Rule 30(b)(6) notice for a person most knowledgeable as to Coleman's marketing and sales efforts of [sic] its Powermate heaters, particularly its change in strategy to target construction and industrial use." (Ex. B.) In response to the notice, defendant produced Tim Daniel, who testified about why defendant

2

began marketing Powermate heaters for construction and industrial use. Daniel testified that he was uncertain why defendant stopped marketing Focus heaters for camping and hunting use. (Ex. 19 at 23:3-13.)

Plaintiff argues that Daniel's lack of knowledge about the discontinuation of Focus heaters made him an unknowledgeable witness. The court cannot find that defendant failed to prepare Daniel in accordance with the notice because the notice leaves it unclear what defendant was supposed to prepare the witness to testify about. Defendant's position is that the decisions to stop marketing Focus heaters and to start marketing Powermate heaters were largely, if not entirely, independent of one another. The letter accompanying the notice implies that plaintiff's interest was in the decision to start marketing Powermate heaters–not the decision to discontinue Focus heaters. Daniel was knowledgeable about the decision to start marketing Powermate heaters. If plaintiff needs to know more about the decision to discontinue Focus heaters, she should notice a deposition to address that topic. Plaintiff's motion to compel a second deposition on the topics covered in the Daniel deposition will be denied.

Plaintiff also complains that defendant has not produced the documents listed in Exhibit A to the notice. Defendant states in response that it has produced some of these documents and that the others do not exist. (Def.'s Resp. at 12-14; Schillings Decl. ¶¶ 6-10.) Defendant further states that it created an Excel file from its electronic databases to provide some of the information requested by plaintiff. Plaintiff complains that only a hard copy of the resulting Excel file was given to her; however, plaintiff also acknowledges that she is not entitled to production of documents created in response to a discovery request.[1] *See Alexander v. FBI*, 194 F.R.D. 305, 310 (D. D.C.

---

[1] It is not clear whether the electronic databases underlying the Excel file have been produced, but it is also unclear whether they were requested.

3

2000) ("Rule 34 only requires a party to produce documents that are already in existence. A party is not required to prepare, or cause to be prepared, new documents solely for their production."). If a document requested does not exist, or is not in the possession, custody, or control of the party from whom it is requested, that party should so state in writing. *See, e.g., Petroleum Ins. Agency, Inc. v. Hartford Acc. & Indem. Co.*, 106 F.R.D. 59, 66 (D. Mass. 1985). Defendant's response to the motion to compel satisfies this obligation; however, plaintiff's motion will nonetheless be granted with respect to the documents listed in Exhibit A.[2] The court cannot, however, compel defendant to prepare a witness to testify about nonexistent documents.

### 3. Willey Deposition

Plaintiff also complains that defendant failed to prepare a knowledgeable 30(b)(6) witness to testify about what effect defendant's correspondence with the Consumer Product Safety Commission (CPSC) had on the warnings and design of the heater involved in this case. On November 12, 2004, plaintiff noticed a 30(b)(6) deposition of:

> a witness identified by Coleman authorized to discuss the impact that the correspondence between Coleman and the CPSC attached as Exhibit A had on Coleman's warnings and design efforts used on the Powermate heater involved in the instant action.

(Ex. 4.) Attached as "Exhibit A" was correspondence between defendant and the CPSC dating from 1992 through 1996. In response to the notice, defendant produced John Richard Willey, who began

---

[2]The question of whether a motion to compel should be granted where the party opposing the motion has subsequently made or promised production is not purely academic. For one thing, the prevailing party on a motion to compel is entitled to expenses and attorney's fees under most circumstances. Moreover, if the motion were denied as moot, the moving party would have to make another motion to compel under Fed. R. Civ. P. 37(a) if it determined that the production did not fully comply with its request, or if the non-moving party failed to honor its promise to produce. When the motion to compel has been granted, the moving party may seek imposition of sanctions under Fed. R. Civ. P. 37(b) under those circumstances.

4

his employment as a product safety and compliance officer for defendant on December 17, 2001. (Ex. 26 at 5:2-9.) Willey prepared for the deposition by reading Exhibit A and speaking with Randy May, defendant's former safety and compliance officer. (Ex. 26 at 13:15-22.) He also examined the Powermate 5012 and compared it to the Focus 5 and Focus 7. (Ex. 26 at 20:24-22:19.) Willey testified that he "didn't look" at information concerning defendant's development of warnings for the Powermate 5012, other than the warnings themselves. (Ex. 26 at 22:13-19.) He also testified that he was assuming that defendant developed warnings for the Powermate 5012 in 1995-1996 in the same way that it developed warnings during his tenure at defendant because he had not been advised that things were done differently in the past. (Ex. 25 at 23:13-24:12.) Willey nevertheless testified that the CPSC correspondence had "very little, if any" impact on the development of warnings for the Powermate 5012 because the Powermate and the Focus heaters discussed in the CPSC correspondence were "two different categories of product." (Ex. 26 at 26:23-27:4.) Willey generally deflected questions concerning his specific knowledge about the relation of the CPSC correspondence to the development of the Powermate 5012 and its warnings. (Ex. 26 at 27-30, 67-70.)

Willey's testimony reveals that he was not prepared to testify about the development of warnings for the Powermate 5012 and therefore based his testimony on guesses. The court will therefore grant plaintiff's motion to take a second 30(b)(6) deposition on the topics covered by Willey. Defendant must prepare the witness at any such deposition to discuss the development of warnings for the Powermate 5012, and the impact, if any, that the CPSC correspondence had on that development.

Plaintiff contends that defendant's counsel interfered with Willey's deposition by making numerous speaking objections to questions allegedly outside the scope of the deposition notice, even

5

after plaintiff's counsel had offered, and defendant's counsel had accepted, a standing objection on that basis. Review of the record reveals that Willey's deposition was needlessly contentious. Defendant's objections to testimony as beyond the scope of the 30(b)(6) notice would have been overruled. The 30(b)(6) notice defines the extent of the deponent's obligation to prepare its witness, not the scope of permissible questioning. *See, e.g., Starlight Intern., Inc v. v. Herlihy*, 186 F.R.D. 626, 658 (D. Kan. 1999). However, it does not appear that defendant's counsel instructed Willey not to answer any questions or prevented the asking or answering of any questions. Plaintiff's motion for sanctions on the basis of deposition conduct will therefore be denied.

**4. Weigand Notes**

Plaintiff argues that defendant must produce Rex Weigand's notes from the inspection and testing of the subject heater and accident site. Weigand, who is defendant's Director of Product Safety and Compliance, took these notes on December 9-10, 2003–over six months after the complaint was filed. (Ex. I at 73.) The existence of Weigand's notes apparently first came to light at Weigand's deposition on December 3, 2004. Defendant had not produced a privilege log listing the notes prior to that time. Defendant nevertheless contended at Weigand's deposition, and contends now, that Weigand's notes are protected from discovery as work product.

Fed. R. Civ. P. 26(b)(3) protects from discovery material "prepared in anticipation of litigation or for trial." "The burden is on the discovery opponent to establish that the work product doctrine immunizes the documents at issue from discovery." *Basf Aktiengesellschaft v. Reilly Indus.*, 224 F.R.D. 438 (D. Ind. 2004). The mere fact that Weigand's notes were prepared at the direction of counsel (defendant's sole argument) does not make them work product. *See, e.g., SR Int'l Bus. Ins. Co. v. World Trade Center Properties, LLC*, 2003 U.S. Dist. LEXIS 1106 (S.D.N.Y.

6

Jan. 29, 2003). Nevertheless, the court concludes that Weigand's notes–documents relating to this litigation and prepared over six months after the complaint was filed–are clearly work product.

The question then arises whether defendant waived work-product protection by failing to list the notes on its privilege log until December 10, 2003, one week after plaintiff deposed Weigand. The purpose of a privilege log is to allow opposing parties to assess the claims of privilege made thereon. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.") Part of that assessment may include questioning witnesses who prepared the allegedly privileged documents at deposition. When the existence of allegedly privileged documents does not come to light until after the deposition, the opposing party is prejudiced by losing the right to assess the privilege. In this case, however, the existence of the documents came to light at Weigand's deposition, allowing plaintiff to ask the questions necessary to assess the privilege. Given that fact, no waiver of work-product protection occurred. *See Breffka & Hehnke GMBH & Co. v. M/V Glorious Success*, 2003 U.S. Dist. LEXIS 21311, at *2 n. 1 (S.D.N.Y. Nov. 23, 2003) (holding that no waiver occurs when delay in submitting privilege log does not prejudice opposing party).

**5. Notes from ODS Testing**

On December 31, 2004, plaintiff served a request for the production of:

Notes from Frank Schmidt and any other Coleman agent's testing of propane radiant heaters containing ODS systems including the Italian model and other models Mr. Schmidt alluded to in his recent deposition from 1993 to the present.

7

(Ex. E at 3.)  Mr. Schmidt had testified at his deposition that he may have taken such notes, but did not know if they still existed.  (Ex. K at 120:14-22.)  Defendant informed plaintiff on February 1, 2005 that it had searched its records and failed to locate any such notes.  (Ex. F.)  It promised to supplement its response if it located the notes in the future.  This response satisfied Defendant's obligations.  *See Alexander*, 194 F.R.D. at 310 ("[A] party can not be required to permit inspection of documents or things that it does not have and does not control.").  Plaintiff's motion to compel a further response will therefore be denied.

**6. Kenneth Bell and Randy May Depositions**

Plaintiff claims that defendant has refused to produce Kenneth Bell, defendant's former in-house counsel and current senior vice-president, and Randy May, a former Coleman employee whom defendant has retained as an expert in this case, for depositions.  Defendant notes that while it objects to Bell's deposition, and would move for a protective order were it noticed, plaintiff has not noticed Bell's deposition.  Defendant disclaims control over May but again notes that plaintiff has not noticed his deposition or subpoenaed him.  Absent a refusal to honor a deposition notice or a subpoena *ad testificandum*, this court cannot grant a motion to compel the depositions.

**ORDER**

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel is **GRANTED** insofar as:

1.  Defendant is ordered to produce the original deposition exhibits identified on Exhibit AA, arranged and numbered as in the "previously identified as privileged" column of that exhibit.

2.  Defendant is ordered to produce the materials identified in Exhibit A to plaintiff's October 29, 2004, notice of deposition (Ex. 18), or to state in writing that such materials do not exist.  The court notes that defendant has already complied with this obligation.

8

3. Plaintiff is granted leave to notice a second 30(b)(6) deposition covering the topics stated in plaintiff's November 12, 2004, notice of deposition. (Ex. 4.)

Plaintiff's motion is otherwise **DENIED.**

In her initial brief, plaintiff asks for a 60-day extension to her deadline for disclosing expert witnesses. Defendant argues in response that plaintiff gives no reason for such an extension. Plaintiff seemingly concedes the point, because she offers no reason in her reply. Accordingly, the court declines to grant the extension.

Plaintiff has requested an award of costs and attorney's fees in connection with her motion to compel. Fed. R. Civ. P. 37(a)(4)(C) provides that "[i]f [a] motion [to compel] is granted in part and denied in part, the court may . . . apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." The court divined six different issues raised in plaintiff's motion. It granted the motion in full with respect to one of those issues, granted it in part and denied it in part with respect to two others, and denied it in full with respect to the remaining three. Accordingly, each side will bear its own costs on this motion.

**SO ORDERED.**

Dated this ‾27th‾ day of May, 2005.


s/ William C. Griesbach _____
William C. Griesbach
United States District Judge

9